1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10                 **WESTERN DIVISION**

11   VICTOR ACOSTA MEZA,            )        No. CV08-600 AGR
                                    )
12              Plaintiff,          )
                                    )        MEMORANDUM OPINION AND ORDER
13        v.                        )
                                    )
14   MICHAEL J. ASTRUE,             )
     Commissioner of Social Security, )
15                                  )
                Defendant.          )
16   _____)

17

18        Plaintiff Victor Acosta Meza ("Meza") filed a Complaint on February 4, 2008.

19   Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate

20   Judge Rosenberg on February 19 and February 22, 2008.  (Dkt. Nos. 8-9.)  The parties

21   filed a Joint Stipulation ("JS") on October 8, 2008, that addresses the disputed issues in

22   the case.  The Commissioner filed the certified administrative record.  The Court has

23   taken the Joint Stipulation under submission without oral argument.

24        Having reviewed the entire file, the Court concludes that the decision of the

25   Commissioner is affirmed.

26   ///

27   ///

28

# I.

## PROCEDURAL BACKGROUND

On May 27, 2005, Meza filed an application for Supplemental Security Income benefits.  AR 18.  On June 8, 2005, he also filed an application for Disability Insurance benefits, alleging a disability onset date of January 30, 1999.[1]  AR 65-67.  The Commissioner denied both applications.  AR 57-62, 189.  Meza requested a hearing.  AR 63.  The Administrative Law Judge ("ALJ") conducted a hearing on May 2, 2007.  AR 197-216.  On May 23, 2007, the ALJ issued a decision denying benefits.  AR 12-25.  Meza filed a Request for Review of the ALJ decision.  AR 10.  On October 22, 2007, the Appeals Council denied the request.  AR 4-7.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523.

---

[1]    Meza has a date last insured of March 31, 2002.  AR 20, 116.  To obtain disability benefits, his disability must be established prior to that date.  20 C.F.R. § 404.131(a) & (b).

### III.

### EVALUATION OF DISABILITY

#### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### B.   ALJ's Findings

The ALJ found that Meza has severe impairments consisting of "type II diabetes mellitus and a history of plantar abscess on the left foot with tenosynovitis."  AR 20. Meza has the residual functional capacity "to perform light work, which does not require fine detailed visual acuity."  AR 21.  Although Meza was unable to perform past relevant work, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  AR 23.  Based on the testimony of a vocational expert, representative unskilled light occupations include housecleaner and food maker positions.  AR 24.

#### C.   Residual Functional Capacity

In assessing Meza's residual functional capacity (RFC), the ALJ considered all of the relevant evidence.  AR 21.  The ALJ found that Meza has the RFC "to perform light work, which does not require fine detailed visual acuity."  AR 21.  Meza argues that the ALJ's finding is not supported by substantial evidence and that he can perform no more than sedentary work.  JS 4.

The Residual Functional Capacity (RFC) determination measures the claimant's capacity to engage in basic work activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986).  The RFC assessment is a determination of "the most [an individual] can still do despite [his or her] limitations."  20 C.F.R. §

3

1    404.1545(a).  It is an administrative finding, not a medical opinion.  20 C.F.R. §

2    404.1527(e)(2).  The RFC takes into account both exertional limitations and non-

3    exertional limitations.  "When there is conflicting medical evidence, the Secretary must

4    determine credibility and resolve the conflict."  *Thomas v. Barnhart,* 278 F.3d 947, 956-

5    57 (9th Cir. 2002) (citation omitted).

6         **Examining Physician's Opinion**

7         The ALJ discussed, and incorporated into Meza's RFC assessment, the opinion

8    of an examining physician (Dr. Jamshid Tamiry) dated August 30, 2005.  AR 22, 124-

9    30.  Dr. Tamiry diagnosed adult onset diabetes mellitus, decreased visual acuity, and

10   bilateral knee strain.  AR 129.  After physical examination, Dr. Tamiry found that "as

11   long as the diabetes is under reasonable control, the claimant has no functional

12   limitations."  *Id.*  Although Meza complained of bilateral pain in his feet and knees, Dr.

13   Tamiry found that Meza's posture was normal, he walked with a normal gait (which was

14   not unsteady or unpredictable), he was able to get on and off the examining table and

15   change positions easily, his range of motion in the knees was "intact with flexion and

16   extension within normal limits," the range of motion in his ankles was "intact with

17   dorsiflexion and plantar flexion within normal limits," and his motor strength was 5/5 in

18   the upper and lower extremities.  AR 126, 128-129.  As to Meza's eyes, Dr. Tamiry

19   noted that the fundi could not be well visualized.  AR 126.  The ALJ accurately

20   summarized Dr. Tamiry's findings in her decision. AR 22.

21        Meza's argument that the ALJ's RFC "is inconsistent with the objective findings of

22   record" is incorrect.  JS 4.  An examining physician's opinion based on independent

23   clinical findings may constitute substantial evidence.  *Orn v. Astrue*, 495 F.3d 625, 632

24   (9th Cir. 2007).  Meza argues that Dr. Tamiry's opinion was "stale" (21 months old) as of

25   the ALJ's decision in May 2007.  JS 6-7.  However, Meza alleges an onset date of

26   January 30, 1999 and filed his application on May 27, 2005.  Dr. Tamiry's opinion in

27   August 2005 is well within the period of alleged disability.  *See* 20 C.F.R. § 416.912(d)

28   ("we will develop your complete medical history for at least the 12 months preceding the

4

month in which you file your application"). The ALJ may properly rely on Dr. Tamiry's opinion.

**Treating Physician (Dr. Gill)**

The record contains Diabetic Progress Notes and "Doctor's Certificates" for state disability insurance benefits from Meza's treating physician, Dr. Gill. *See* AR 140-184. The two "Doctor's Certificates" are dated May 31, 2005 and December 8, 2005. AR 141, 146. Dr. Gill diagnosed Meza with diabetes mellitus.[2] AR 141, 146. In the box that asks for a statement of the "nature, severity, and extent of the incapacitating disease or injury," Dr. Gill listed only high blood sugar.[3] AR 141, 146. The Diabetic Progress Sheets record Meza's blood sugar levels, which ranged from 252 to 350 during 2004-2007. AR 140 (329 on 1/2/07), 143 (326 on 11/15/05), 144 (309 on 6/3/05), 145 (350 on 5/31/05), 149 (349 on 5/20/05), 150 (278 on 4/15/05), 152 (295 on 3/4/05), 153 (219 on 9/20/04), 154 (304 on 5/24/04), 155 (290 on 5/18/04), 157 (252 on 4/27/04), 158 (298 on 4/23/04), 160 (349 on 4/19/04), 166 (422 on 4/15/04).

Dr. Gill's treatment records do not indicate limitations caused by diabetes or high blood sugar levels. Although the ALJ did not expressly mention the Doctor's Certificates, she was not required to do so. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (ALJ need not "recite the magic words, 'I reject Dr. Fox's opinion about the onset date because'"). It is clear from the ALJ's opinion what she accepted from Dr. Gill's medical records, what she did not accept and why. "As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id.* The ALJ acknowledged high blood glucose levels, but found that

---

[2] The May 31, 2005 certificate also lists osteoarthritis, but does not list any findings as to the nature, severity and extent of that condition. AR 146. That diagnosis is not listed in the certificate dated December 8, 2005.

[3] There is a prescription form dated April 19, 2004 that contains a handwritten note: "This is to inform you that the above patient [Meza] is unable to work for 6 months." AR 159. It contains no other information or explanation.

"there is an issue of compliance in this case."  AR 21.  Meza testified that his doctor
recommended insulin, but he refused.  AR 21, 202-203.  Also, Meza did not check his
blood sugar levels regularly.  AR 21, 203.  Further, the treatment records showed no
evidence of "limiting diabetes related symptoms of polyuria, polydipsia, and nocturia,
and no evidence of serious diabetes related complications, such as diabetic retinopathy,
diabetic nephropathy, or peripheral artery disease, which could restrict work activity."
AR 21.

**MRI**

The ALJ addressed the results of a 2006 MRI of the left foot, which "confirmed
the findings of an abscess and ulcer along the plantar aspect of the foot and
tenosynovitis."  AR 22, 136.  Meza testified that he stepped on a nail, left the wound
untreated, and developed an infection.  AR 207.  He had surgery.  *Id.*  The ALJ found
that "clinical examination records fail to reflect significant left foot related findings."  AR
22.  Meza testified that his left foot "hurts when I step on it because it's very hard."  AR
207.  When asked by the ALJ to explain what he meant, Meza testified that "they put
something inside of it," it is "not metal but I feel – it feels very hard."  AR 204.

Meza argues that the MRI provides objective findings supporting a limitation to
sedentary exertion.  JS 7.  However, Meza had surgery on his left foot and produced no
medical records showing post-surgery complications or effects on the left foot.  The only
post-surgical treating record on January 2, 2007 contained a diagnosis of diabetes
mellitus and low back pain, with no mention of left foot complications or effects.  AR
140.  Meza alternatively asserts that the ALJ should have recontacted the treating
physician.  JS 7.  However, "[a]n ALJ is required to recontact a doctor only if the
doctor's report is ambiguous or insufficient for the ALJ to make a disability
determination."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Thomas*, 278
F.3d at 958.  Given that the treating physician made no mention of post-surgical left foot
complications or effects, the ALJ did not have a duty to recontact the treating physician.
*Id.*  To the extent Meza argues that the evidence is susceptible to more than one

1 rational interpretation, the Court must defer to the decision of the Commissioner.

2 *Moncada*, 60 F.3d at 523.

3      **B.**    **Meza's Credibility And Subjective Complaints**

4      "To determine whether a claimant's testimony regarding subjective pain or

5 symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v.*

6 *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

7      First, "the ALJ must determine whether the claimant has presented objective

8 medical evidence of an underlying impairment 'which could reasonably be expected to

9 produce the pain or other symptoms alleged.'" *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d

10 341, 344 (9th Cir. 1991) (en banc)).  Here, the ALJ did not make an express finding, but

11 her discussion assumes that Meza satisfied this prong.  AR 21-23.

12      "Second, if the claimant meets this first test, and there is no evidence of

13 malingering, 'the ALJ can reject the claimant's testimony about the severity of her

14 symptoms only by offering specific, clear and convincing reasons for doing so.'"

15 *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination,

16 the ALJ 'must specifically identify what testimony is credible and what testimony

17 undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

18 2006) (citation omitted).

19      Here, the ALJ made no finding of malingering.  "[T]o discredit a claimant's

20 testimony when a medical impairment has been established, the ALJ must provide

21 specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation

22 marks omitted).  "The ALJ must cite the reasons why the claimant's testimony is

23 unpersuasive." *Id.* (citation and quotation marks omitted).  In weighing credibility, the

24 ALJ may consider factors including:  the nature, location, onset, duration, frequency,

25 radiation, and intensity of any pain; precipitating and aggravating factors (e.g.,

26 movement, activity, environmental conditions); type, dosage, effectiveness, and

27 adverse side effects of any pain medication; treatment, other than medication, for relief

28 of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of

credibility evaluation."  *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13,[4] internal quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies between claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ found that Meza's subjective complaints were not credible to the extent that Meza would be precluded from light work.  AR 22.  The ALJ gave four reasons:  (1) "extreme disparity between the claimant's significant subjective complaints and the objective findings"; (2) "issue of compliance"; (3) Meza uses Motrin for pain relief from foot and back complaints; and (4) during the period of Meza's alleged disability, in 2003, Meza performed work activity for pay, indicating physical capability contrary to Meza's allegations of disability.  AR 22-23.

The ALJ may properly rely on the absence of medical records supporting Meza's subjective allegations, although it would not be sufficient alone to discount his credibility.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

As to the second reason based on noncompliance, Meza does not dispute the ALJ's findings that he does not use insulin and does not regularly check his blood sugar levels.  JS 13; AR 23.  However, Meza argues that the ALJ may not rely on Meza's noncompliance because the issue does not relate to Meza's foot treatment.  JS 13.  There is no legal requirement that noncompliance must relate to a specific condition.  *See Thomas*, 278 F.3d at 959 (ALJ may rely on lack of candor as to drug and alcohol usage to discount credibility as to severity of pain).

Meza does not appear to dispute the ALJ's finding that he uses Motrin for pain relief after surgery.  JS 13-14; AR 205.  The ALJ may properly rely on a claimant's use

---

[4]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

of conservative pain medication to discount severity of pain.  *See Parra v. Astrue*, 481
F.3d 742, 750-51 (9th Cir. 2007); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.
2008).

As to the fourth reason, the ALJ may properly rely on Meza's work activity for pay
during his period of alleged disability to discount the credibility of his allegations that he
lies down most of the day, has no strength and is very sleepy.  AR 20, 22-23, 70, 202,
206; *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of
activity were inconsistent with the Claimant's claimed limitations would these activities
have any bearing on Claimant's credibility.").  Meza argues that this reason no longer
has validity because he "now seeks disability after that date, specifically, January 13,
2005."  JS 14.  Meza did not amend his alleged onset date and, in any event, does not
explain why a lack of credibility in 2003 would not carry over to 2005.  To the extent
Meza seeks to require an ALJ to make separate credibility findings for each year of
alleged disability, he provides no authority for such a requirement.

"If the ALJ's credibility finding is supported by substantial evidence in the record,
we may not engage in second-guessing."  *Thomas*, 278 F.3d at 959; *Morgan v.
Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

**IV.**

**CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order
and the Judgment herein on all parties or their counsel.

DATED: February 19, 2009

_____
ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

9